UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FAOUAZ SALIM MOURAD,

          Plaintiff,

vs.

AMERICAN HOME MORTGAGE
SERVICING, INC., BILAL HAMIE,
and 1ST RATE REALTY,

          Defendants.

_____/

Civil Action No.
10-cv-13853

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

## OPINION AND ORDER
### (1) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Dkt. No. 41),
### (2) GRANTING PLAINTIFF'S MOTIONS FOR DEFAULT JUDGMENT (Dkt. Nos. 42 and 43), and
### (3) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Dkt. No. 44)

This is a mortgage foreclosure case. Faouaz Salim Mourad ("Plaintiff") filed the Complaint in this matter in Oakland County Circuit Court. On September 27, 2010, American Home Mortgage Servicing, Inc. ("AHMSI" or "Defendant") removed the case to this Court. (Dkt. No. 1.) Defendant alleged in its Notice of Removal that the only other named defendants who had been served, Bilal Hamie and 1st Rate Realty, consented in the removal. On July 6, 2011, and November 10, 2011, the Court dismissed without prejudice several unserved defendants: Motor City Mortgage Company, American Premier Title Agency, Paul Metro Valuation Group, and American Premier Title Agency. (Dkt. Nos. 27 and 40.)

On February 3, 2012, Plaintiff filed a Motion for Summary Judgment against Defendant AHMSI. (Dkt. No. 41.) Plaintiff also filed Motions for Default Judgment against Defendants Bilal

Hamie and 1ˢᵗ Rate Realty.  (Dkt. Nos. 42 and 43.)  Also on February 3, 2012, Defendant AHMSI

filed a Motion for Summary Judgment.  (Dkt. No. 44.)  Defendants Bilal Hamie and 1ˢᵗ Rate Realty

did not respond to Plaintiff's Motions for Default Judgment.  Both motions for summary judgment

have been fully briefed.  The Court held a hearing on May 3, 2012.

For the reasons stated below, the Court will:

(1) DENY Plaintiff's Motion for Summary Judgment;

(2) GRANT Plaintiff's Motion for Default Judgment as to 1ˢᵗ Rate Realty;

(3) GRANT Plaintiff's Motion for Default Judgment as to Bilal Hamie; and

(4) GRANT Defendant AHMSI's Motion for Summary Judgment.

## I. BACKGROUND

Plaintiff purchased a lot located at 18585 Sheldon in Northville, Michigan, in 2002 (the

"property").  On February 3, 2006, Plaintiff borrowed $3,400,000 under a mortgage agreement with

Mortgage Electronic Registration Systems, acting as nominee for American Brokers Conduit.

Plaintiff used the mortgage to finance the construction of a 17,373 square foot, custom-designed

home that Plaintiff describes as his "dream home[.]"  (Def.'s Mot. Summ. J. Ex. 1, March 2009

Letter.)  On April 20, 2007, Plaintiff refinanced his mortgage loan with American Brokers Conduit

by signing an Adjustable Rate Note for $3,702,000, and signed a new mortgage agreement.  (Def.'s

Mot. Summ. J. Exs. 7 and 9, Adjustable Rate Note and Mortgage.)  Defendant AHMSI was the

servicer under the refinanced mortgage loan.  Plaintiff represented on the Uniform Residential Loan

Application that his gross monthly income was $64,850.  (Def.'s Mot. Summ. J. Ex. 8, Loan

Application 2.)

The Adjustable Rate Note, signed by Plaintiff, provided as follows at the top of the first page:

2

> THIS NOTE CONTAINS PROVISIONS ALLOWING FOR
> CHANGES IN MY INTEREST RATE AND MY MONTHLY
> PAYMENT. DURING THE FIRST 7 YEARS OF THIS NOTE, MY
> MONTHLY PAYMENT MAY NOT FULLY PAY THE INTEREST
> THAT ACCRUES. AS A RESULT, THE PRINCIPAL AMOUNT
> I REPAY MAY BE LARGER THAN THE AMOUNT I
> ORIGINALLY BORROWED, BUT NOT MORE THAN 120.000%
> OF THE ORIGINAL AMOUNT . . . .

(Adjustable Rate Note 1.) Plaintiff also signed an Adjustable Rate Rider with the mortgage loan,

which contained the same language and further provided as follows:

> During the Initial Period, my minimum required monthly payment
> will be less than the amount of interest that accrues on the Principal
> balance of the loan at the Initial Stated Rate. During the Initial
> Period, for each month that my monthly payment is less than the
> amount of interest that accrues on the Principal balance of the loan at
> the Initial Stated Rate, the Note Holder will subtract the amount of
> the monthly payment from the amount of the interest that accrues on
> the Principal balance of the loan for that month and add the difference
> to the Principal balance of my loan . . . .

(Def.'s Mot. Summ. J. Ex. 9, Adjustable Rate Ride 2.)

Plaintiff alleges that, sometime in late 2008, he "contacted Defendants by telephone to

inquire about the increasing principal balance of the Loan." (Compl. ¶ 23.) Plaintiff claims that

none of the named Defendants subsequently explained why the principal balance was increasing or

provided any additional disclosures.

In December 2008, Plaintiff stopped making his mortgage payments. After foreclosure

proceedings were initiated in October 2009, Plaintiff, represented by different counsel, filed a lawsuit

against Defendant AHMSI, which Defendant removed to this United States District Court as case

number 2:09-cv-14607. In this prior federal case, before United States District Judge Patrick

Duggan, Plaintiff alleged the following counts: (1) Violation of 15 U.S.C. § 1639; (2) Predatory

Lending; (3) Violation of Truth in Lending Act, 15 U.S.C. § 1601, et seq.; (4) Fraudulent

Misrepresentation/Fraudulent Inducement; (5) Negligent Misrepresentation; and (6) Violation of

Mortgage Brokers, Lenders, and Servicers Licensing Act, MCL § 445.1651, et seq. (Def.'s Mot.

Summ. J. Ex. 14, *Mourad v. Am. Home Mort. Servicing, Inc.* Complaint.) On December 14, 2009,

Plaintiff filed a Notice of Voluntary Dismissal, which provided "that Plaintiff's claims against

Defendant American Home Mortgage Servicing, Inc. are dismissed with prejudice." (Def.'s Mot.

Summ. J. Ex. 15, Notice of Voluntary Dismissal.) Judge Duggan entered the stipulated order on

December 15, 2009.

A new foreclosure notice was sent to Plaintiff on January 8, 2010. (Def.'s Mot. Summ. J.

Ex. 16, Foreclosure Notice.) A foreclosure sale was held on March 10, 2010, at which Plaintiff's

property was purchased. (Def.'s Mot. Summ. J. Ex. 19, Sheriff's Deed.) Plaintiff filed the instant

Complaint on August 17, 2010. Plaintiff's right to redeem the property expired on September 10,

2010.

## II. LEGAL STANDARD

Plaintiff and Defendant have filed cross motions for summary judgment pursuant to Federal

Rule of Civil Procedure 56(c). Summary judgment is appropriate when "the pleadings, the discovery

and disclosure materials on file, and any affidavits show that there is no genuine issue as to any

material fact[.]" Fed. R. Civ. P. 56(c). The Court must, however, view the evidence and draw all

reasonable inferences in favor of the party opposing summary judgment. *Matsushita Electric*

*Industrial Co., Ltd., et al. v. Zenith Radio Corp., et al.*, 475 U.S. 547, 587 (1986). Still, "the mere

existence of a colorable factual dispute will not defeat a properly supported motion for summary

judgment. A genuine dispute between the parties on an issue of material fact must exist to render

4

summary judgment inappropriate." *Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996). The test is whether a rational trier of fact could, based on the evidence presented as a whole, find in favor of the non-moving party. *Matsushita*, 475 U.S. at 587.

## III. ANALYSIS

### A. Motions for Summary Judgment

On February 1, 2011, the parties stipulated to dismissal with prejudice of Count I (Fraudulent Misrepresentation), Count III (Violation of Mortgage Brokers, Lenders, and Servicer Licensing Act), and Count IV (Breach of Contract) against Defendant AHMSI. *See* Stipulated Order (Dkt. No. 11.) Plaintiff alleged Count II (Fraud), Count V (Breach of Contract), Count VIII (Defamation), Count IX (Intentional Interference With a Contractual Relationship), and Count X (Intentional Infliction of Emotional Distress) against Defendants Hamie and 1ˢᵗ Rate Realty only. Furthermore, Plaintiff has not claimed that Defendant AHMSI took any actions that caused the alleged violation in Count VI (Malpractice). Accordingly, the only remaining claims against Defendant AHMSI are Count VII (Violation of 15 U.S.C. § 1639), Count XI (Quiet Title), Count XII (Violation of MCL § 600.3204), and Count XIII (Injunctive Relief).

### *1. Violation of 15 U.S.C. § 1639 (Truth in Lending Act)*

Plaintiff claims that the refinancing loan he was issued on April 20, 2007, violated the Truth in Lending Act ("TILA") because it was a negatively amortized loan. *See* 15 U.S.C. § 1639(f) (providing that "[a] mortgage . . . may not include terms under which the outstanding principal balance will increase at any time over the course of the loan because the regular periodic payments do not cover the full amount of interest due.")

Plaintiff's TILA claim against Defendant AHMSI is barred by res judicata. In his prior

federal case, involving the same loan transaction at issue in this case, Plaintiff alleged that Defendant AHMSI violated § 1639(f) "by locking Plaintiff into a negative amortization loan." (*Mourad v. Am. Home Mort. Servicing, Inc.* Complaint ¶ 30.) Plaintiff also alleged that Defendant AHMSI violated § 1639(h) by extending credit "without regard to his ability to repay the debt . . . ." (*Id.* ¶ 28.) Plaintiff stipulated to the dismissal of this claim with prejudice on December 14, 2009.

Plaintiff argues that the new foreclosure action initiated in 2010 gave rise to a new TILA claim under § 1639, relying on § 1640(g), which provides that "continued failure to disclose after a recovery has been granted shall give rise to rights to additional recoveries." However, Plaintiff's current claims under § 1639 relate exclusively to the extension of credit on April 20, 2007, as did Plaintiff's TILA claim in his prior federal case. The claim does not relate in any way to the 2010 foreclosure action.

Plaintiff's claim is further undercut by his April 2, 2009 deposition testimony, which was taken as part of an insurance investigation of a fire that occurred in one of Plaintiff's garages. Plaintiff's deposition testimony reveals that he clearly understood the terms of his refinanced loan transaction prior to the 2010 foreclosure:

> Q      Okay.  So when you originally got the loan, your monthly payment was $27,500?
> A      Right.
> Q      Okay.  And then did they agree to change that and allow you to only pay --
> A      I didn't change it.  Day one I sign it.  When I have the closing, this is the agreement between both party, me and ABC, about paying 40 percent from the interest.  The difference is they threw it to the end of the loan.
> ( . . . . )
> Q      Okay.  So at $27,500 a month, that's just interest only?
> A      Interest only.
> Q      But you have an option to pay 40 percent of that, and that's

6

what you're doing?

A      Correct.

Q      And they add the difference on the back end of your loan?

A      Correct.

(Def.'s Mot. Summ. J. Ex.12, Mourad Dep. 33-34.)

The instant claim under § 1639 does not arise out of a continued failure to disclose the terms of Plaintiff's refinanced loan, as he alleges. Rather, it is the same as Plaintiff's prior § 1639 claim, and is thus barred by res judicata. *See United States v. One Tract of Real Property*, 95 F.3d 422, 426 (6th Cir. 1996) (noting that "a dismissal with prejudice operates as a rejection of the plaintiff's claims on the merits and res judicata precludes further litigation.").

*2. Quiet Title*

Plaintiff alleges that Defendant does not have a secured interest in the property because of the failure to disclose material facts when Plaintiff signed the refinancing loan. Defendant argues that Plaintiff has failed to demonstrate any failure to disclose or fraud caused by Defendant, and that Plaintiff's quiet title claim should therefore be dismissed.

The Court agrees with Defendant. Plaintiff correctly notes that fraud, deceit, and intentional violations of statutory duties could constitute grounds for the Court to exercise its equitable powers, but there is no fraud, deceit, or intentional violation evidenced in the instant case. The relevant aspects of Plaintiff's refinanced loan were clearly disclosed in the Loan Application, Adjustable Rate Rider, and TILA Disclosure form. (Def.'s Mot. Summ. J. Ex. 13 - TILA Disclosures.) Accordingly, the Court will dismiss Plaintiff's quiet title claim.

*3. Violation of MCL § 600.3204*

Plaintiff alleges that Defendant violated Michigan's foreclosure laws by failing to provide

7

the required notices when it foreclosed on the property. Defendant has presented evidence that Plaintiff was mailed a Notice of Foreclosure, and that an additional Notice was posted at the property. (Def.'s Mot. Summ. J. Exs. 16 and 17, Notice of Mailing and Notice of Posting.)  In response, Plaintiff appears to abandon his alleged claims of insufficient notice, instead arguing that "if the mortgage contract is void, the mortgagee may not foreclose on a void contract." (Pl.'s Resp. to Summ. J. 12.)

As noted *supra*, Plaintiff has failed to establish that his loan transaction is subject to statutory sanctions or equitable relief. Moreover, because the foreclosure sale has already taken place and the redemption period has passed, Plaintiff no longer has standing to challenge the validity of the foreclosure. *See Piotrowski v. State Land Office Bd.*, 302 Mich. 179, 187 (1942) (holding that "plaintiffs did not avail themselves of their right of redemption in the foreclosure proceedings and at the expiration of such right . . . all plaintiffs' rights in and to the property were extinguished."); *see also Drew v. Kemp-Brooks*, 802 F. Supp. 2d 889, 894 (E.D. Mich. 2011) (Cohn, J.) (holding that plaintiff lacked standing to challenge a foreclosure sale after the redemption period expired, and that "the filing of [the] lawsuit did not toll the redemption period."). Plaintiff's claims challenging the validity of the foreclosure sale are therefore dismissed.

*4. Injunctive Relief*

Plaintiff's claims for injunctive relief are based on Defendant's alleged violations of Michigan's foreclosure laws. Accordingly, because Plaintiff's claims to invalidate the foreclosure sale are dismissed, his claims for injunctive relief must also be dismissed.

**B. Plaintiff's Motions for Default Judgment**

Plaintiff has brought two Motions for Default Judgment as to Defendants Bilal Hamie and

1st Rate Realty.  Plaintiff seeks entry of a judgment against both Defendants in the amount of $2,705,100, with interest from date of filing, and costs in the amount of $250.

Plaintiff's allegations against Defendants Hamie and 1st Rate Realty arise out of an alleged contract to sell the property, and are not related to the refinanced mortgage loan transaction discussed *supra* at Part A.  Plaintiff alleges that, between December 1, 2009 and March 15, 2010, he hired Defendants Hamie and 1st Rate Realty to sell his home.  The Defendants requested $3,100 in cash, which Plaintiff paid.  Plaintiff alleges that Defendants Hamie and 1st Rate Realty never tried to sell the property, and were in fact not licensed realtors.  Plaintiff claims that because the market value of his home at the time was approximately $2,700,000, his exposure in foreclosure would have been limited to $1,000,000 rather than $3,702,000.  (Pl.'s Aff. in Supp. of Mot. Default Judgment 2-3.)

On July 29, 2011, a Return of Service was filed for both Defendants Hamie and 1st Rate Realty.  (Dkt. Nos. 29 and 30.)  Subsequently, on August 25, 2011, the Clerk entered a default against both Defendants.  (Dkt. Nos. 34 and 35.)  Neither Defendant Hamie or Defendant 1st Rate Realty have filed a notice of appearance or any response to Plaintiff's motions.  Therefore, the Court will GRANT Plaintiff's Motions for Default Judgment.

## IV. CONCLUSION

For the reasons stated above, the Court will:

(1) DENY Plaintiff's Motion for Summary Judgment;

(2) GRANT Plaintiff's Motion for Default Judgment as to 1st Rate Realty;

(3) GRANT Plaintiff's Motion for Default Judgment as to Bilal Hamie; and

(4) GRANT Defendant AHMSI's Motion for Summary Judgment.

This case is now closed.

9

**SO ORDERED**.

Dated: 6-8-12
Detroit, Michigan

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE